UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| **GALE MILLER ANDERSON on Behalf of Herself and on Behalf of All Others Similarly Situated,** § § § § | | |
| Plaintiff, § | **CIVIL ACTION NO.: 1:22-cv-6001** | |
| § | | |
| V. § | | |
| § | **JURY TRIAL DEMANDED** | |
| **AMAZON.COM SERVICES, LLC,** § § | | |
| Defendant. § | | |

**PLAINTIFF'S CLASS ACTION COMPLAINT AND JURY DEMAND**

**I.     INTRODUCTION**

1.     This is a class action lawsuit brought by Plaintiff Gale Miller Anderson ("Plaintiff"), individually and on behalf of all others similarly situated ("Class Members") to recover unpaid wages, penalties, and attorneys' fees and costs. Defendant Amazon.Com Services, LLC ("Amazon") implemented an illegal policy requiring its non-exempt workers to undergo a COVID-19 screening each shift without pay. This physical and medical examination constitutes compensable time that was worked by the Plaintiff and the Class Members. By failing to pay for this time worked, Amazon has violated Illinois law. In addition to the Plaintiff, Amazon has failed to pay for the time spent undergoing COVID-19 screenings by thousands of other workers across the State of Illinois.

2.     Amazon's conduct violates the state laws of Illinois because Amazon failed to pay for all hours worked by its employees and failed to pay overtime wages as required by Illinois law. *See* 820 ILCS § 105/1 *et seq.* (the Illinois Minimum Wage Law); 820 ILCS § 115/1 *et seq.*

1

(the Illinois Wage Payment and Collection Act).

## II.     JURISDICTION AND VENUE

3.      This Court has jurisdiction over subject matter of this action pursuant to the Class Action Fairness Act, 28 U.S.C. § 1332(d)(2) ("CAFA"). Under CAFA, this court has original jurisdiction over Plaintiff's Rule 23 class action claims because the matter in controversy is believed to exceed $5,000,000, and because Plaintiff and Defendant are citizens of different states. Moreover, the number of proposed class members in Illinois is believed to exceed 100 individuals.

4.      Venue is proper in this District because a substantial portion of the events forming the basis of this suit occurred in or near Chicago, Illinois. Plaintiff worked in this District and was denied wages in this District.

5.      Amazon is subject to personal jurisdiction before this Court because it has purposefully availed itself of the privileges of conducting activities in the State of Illinois and established minimum contacts sufficient to confer jurisdiction. Amazon does business in Illinois, advertises in Illinois, markets to Illinois consumers, and the violations of the law forming basis of this lawsuit occurred in Illinois. Further, Amazon maintains offices in Illinois and employs Illinois residents. Therefore, the assumption of jurisdiction over Amazon will not offend traditional notions of fair play and substantial justice and is consistent with the constitutional requirements of due process.

6.      This Court is empowered to issue a declaratory judgment and further relief pursuant to 28 U.S.C. §§ 2201 and 2202.

## III.    PARTIES AND PERSONAL JURISDICTION

7.      Plaintiff Gale Miller Anderson is an individual residing in Chicago, Illinois. At all

relevant times, Plaintiff has been domiciled in and is a resident of the State of Illinois.

8.      The "Class Members" are all current and former hourly paid employees of Amazon who underwent a COVID-19 screening during at least one week in Illinois in the three-year period before the filing of the Original Complaint until final resolution of this Action.

9.      Defendant Amazon.com Services, LLC is a Delaware limited liability company with its principal place of business located in Seattle, Washington. Defendant can be served with process by serving its registered agent the Illinois Corporation Service Company at 801 Adlai Stevenson Drive, Springfield, IL 62703.

10.     At all material times, Amazon was and is legally responsible for the unlawful conduct, policies, practices, acts, and omissions as described and set forth in this Complaint, as the employer of Plaintiff and Class Members. *See* Illinois Minimum Wage Law, 820 ILCS § 105/3(c); Illinois Wage Payment and Collection Act, 820 ILCS § 115/1 *et seq*.

11.     At all material times, Plaintiff and Class Members were employees of Amazon within the meaning of the Illinois Minimum Wage Law and the Illinois Wage Payment and Collection Act. 820 ILCS § 105/3.

## IV.     FACTS

12.     The novel Coronavirus has infected nearly 100 million Americans and caused the death of nearly one million Americans. (*See* https://coronavirus.jhu.edu/us-map, last visited October 25, 2022).[1] Following the outbreak of the Coronavirus, Amazon implemented a company-wide policy requiring each of its hourly, non-exempt employees to undergo a physical and medical examination to check for symptoms of the Coronavirus each shift. This examination

---

[1]     In Illinois, the Coronavirus has infected nearly four million Illinois residents, and has resulted in approximately 40,000 confirmed deaths. (*See* https://coronavirus.jhu.edu/region/us/illinois, last visited October 25, 2022).

was imposed by Amazon as a requirement to work each shift. The examination was conducted on the premises of Amazon, was required by Amazon, and was necessary for each employee to perform his/her work for Amazon. Unfortunately, Amazon refused to pay for this time. Amazon's conduct violates Illinois law. This illegal conduct continues to this day.

13. Amazon operates fulfillment centers and distribution centers in Illinois and across the country. These Amazon facilities are large warehouses that normally operate 24 hours per day. These Amazon facilities are the warehouses where Amazon stores the packages that are delivered to customers. Upon information and belief, Amazon employs more than 20,000 workers in Illinois at distribution centers and fulfillment centers throughout the state.

14. Plaintiff worked for Amazon as an hourly, non-exempt employee for Amazon in Joliet, Illinois and in Chicago, Illinois. She worked from approximately October 2017 to October 2021. She worked as a fulfillment center associate. Her job duties included moving boxes, stacking packages, and loading boxes. She worked a schedule that was four days on and three days off. Each shift was scheduled for 11 hours and was normally 7 am to 6pm. Thus, she normally worked more than 40 hours per week. Plaintiff worked with hundreds of other Amazon workers at the Joliet and Chicago fulfillment center locations.

## COVID-19 SCREENING

15. As an hourly, non-exempt employee, Plaintiff was required to clock-in and clock-out each day. Unfortunately, Amazon did not pay for all hours that she worked. During the COVID-19 pandemic, Plaintiff was required to undergo a physical and medical examination to screen for symptoms of COVID-19 *before* clocking-in each day. This COVID-19 screening was required by Amazon but, unfortunately, Amazon did not pay any of its employees, including Plaintiff, for the time spent undergoing the COVID-19 screening.

16. In Illinois, Amazon required its employees to arrive at its fulfillment centers and distribution centers prior to the start of their scheduled shifts. However, when employees of Amazon arrived, they were not allowed to clock-in for the day until they passed a physical and medical examination to screen for symptoms of COVID-19. Because they clocked in after completing the COVID-19 screenings, no Amazon employee in Illinois was paid for the time spent in the COVID-19 screening.

17. Prior to the start of their shifts, Amazon employees were required to form a line at the entrance to the facility and to stand six feet apart. Amazon employees were then called one-by-one to a checkpoint where the COVID-19 screening took place. Each employee whose shift was set to begin was required to undergo a temperature check and to answer questions about his/her health. If the employee passed the examination, he/she was then given a mask to wear. After putting on the mask, the employee then walked to the next station, which was normally hundreds of feet away, where the employee was allowed to clock-in for the day.

18. The amount of time it takes to wait in line, undergo the COVID-19 examination, and walk to the time clocks was approximately 10 minutes to 15 minutes on average. This amount of time could be longer depending upon the number of other Amazon employees in line for the COVID-19 screening and waiting at the time clocks.

19. Plaintiff knows and is aware that other Amazon facilities in Illinois have COVID-19 screening procedures because there were multiple notices posted around the facility indicating that COVID-19 screening and prevention practices were being instituted across Amazon facilities at a corporate level.

20. This COVID-19 screening should have been paid by Amazon because it constitutes compensable time worked. During this time, Plaintiff and Class Members were subject to

5

Amazon's control.

21. Plaintiff and Class Members were required to follow Amazon's instructions while awaiting, during the COVID-19 screening, and before clocking-in for the day. Amazon required every employee to complete the COVID-19 screening and it was not optional. Indeed, the COVID-19 screening was required by Amazon and its employees were required to comply under threat of discipline, including possible termination.

22. Additionally, Plaintiff and Class Members were confined to the premises of Amazon when they waited for the examinations and during the examinations.

23. Moreover, Amazon compelled its employees to perform specific tasks during the examinations. They were required to answer questions, submit to have their temperature taken, and wear masks.

24. In other words, Amazon directed, commanded, and restrained its employees during the COVID-19 examinations; prevented them from using that time effectively for their own purposes; and they remained subject to Amazon's control during the examinations and before clocking-in.

25. Plaintiff and the Class Members were required to clock-in on time after completing the COVID-19 screening. If they clocked-in late, they would be disciplined. Further, after completing the COVID-19 screening, the Plaintiff and Class Members were confined to the premises of Amazon and were instructed to walk to the time clocks to clock-in. Again, Amazon directed, commanded, and restrained its employees during and after the COVID-19 examinations; prevented them from using that time effectively for their own purposes; and they remained subject to Amazon's control.

26. The COVID-19 screenings were necessary to the principal work performed by the

6

Plaintiff and Class Members and were necessary to ensure a safe workplace. The COVID-19 examinations were also undertaken on Amazon's premises, were controlled and required by Amazon, and undertaken primarily for the benefit of Amazon.

27. Indeed, Amazon required Plaintiff and Class Members to undergo this screening for the purposes of overall safety in the Amazon facilities and to prevent the Plaintiff and Class Members from inadvertently and unintentionally infecting the Amazon facilities or Amazon products, and in turn, Amazon's customers. Likewise, the job duty of the Plaintiff and Class Members was to serve the customers of Amazon and the screening was necessary to ensure that Plaintiff and Class Members safely provide that service.

28. The COVID-19 examinations were necessary to ensure that the virus did not infect the Amazon facilities or customers. The examinations were also necessary to ensure that the virus did not disrupt the work performed by Plaintiff and Class Members or affect the business operations of Amazon. If Amazon did not have the COVID-19 screening, workers could inadvertently or unintentionally bring the virus into the Amazon facilities causing a mass breakout of the virus infecting hundreds to thousands of other workers of Amazon.

29. The COVID-19 screenings were integral and indispensable to the principal activity and primary job duty performed by Plaintiff and Class Members, which was to serve and assist Amazon customers. The COVID-19 screenings were necessary for Plaintiff and Class Members to perform their primary job duty for Amazon. If Amazon cancelled the COVID-19 screening, the Amazon facilities could get contaminated with the virus, the items that Amazon sold could get contaminated with the virus, the customers could get infected, and other employees of Amazon could get infected. In that event, Amazon's business would be disrupted, and Plaintiff and Class Members would not be able to do their work. Therefore, the COVID-19 screenings

7

were necessary to ensure that Plaintiff and Class Members could do their jobs for Amazon.

30. The COVID-19 screenings were also integral and indispensable to the principal activity and primary job duty performed by Plaintiff and the Class Members because the COVID-19 screenings were necessary to ensure that Amazon workers could perform their work safely, to prevent contamination from the virus, and to keep the customers of Amazon safe. If employees became infected with the virus, they would not be able to provide their services to Amazon. Moreover, if Amazon customers received packages that were infected with the virus, the customers would likely no longer use Amazon's services.

31. Thus, the COVID-19 screenings were necessary for the Plaintiff and Class Members to do their work for Amazon and without the screenings, their ability to do their jobs would have been compromised. Plaintiff and the Class Members could not skip the screenings altogether without the safety or effectiveness of their principal activities being substantially impaired. The screenings prevented the COVID-19 virus from spreading through Amazon's facilities and infecting employees and products, thereby allowing Amazon employees to continue to work.

32. Under these facts, the COVID-19 screenings were for the benefit of Amazon and its customers. The COVID-19 screenings allowed Amazon's operations to continue and therefore, allowed Amazon to earn a profit. Similarly, the COVID-19 screenings benefited Amazon's customers by allowing them to receive products in a timely basis and to receive products that were not contaminated. Indeed, the COVID-19 screenings were conducted by Amazon with the intent for Amazon to benefit, to earn more profits, and to continue its business. In fact, Amazon's business substantially grew during the pandemic and it appears that the pandemic provided a windfall for Amazon's operations.

33. The COVID-19 screenings were also primarily for the benefit of Amazon because Amazon's COVID-19 screening policy was intended to keep its fulfillment centers and distribution centers as safe of a workplace as possible given the circumstances of the global pandemic. Amazon's COVID-19 screening policy was also intended to ensure the safety of Amazon's workers and to ensure that Amazon complied with the law. By making the workplace safe, Amazon increased the efficiency of Amazon's operations and allowed it to make billions in profits during the pandemic. Indeed, having business operations continue without interruption undoubtedly increased the profits of Amazon. Similarly, complying with all laws ensured Amazon could continue to operate and earn profits. Moreover, having employees who are healthy and able to perform their work ensures that Amazon can continue to operate and earn profits.

34. The COVID-19 screenings were also to ensure that the virus did not disrupt the work performed by the Plaintiff/Class Members or affect the business operations of Amazon. If Amazon facilities suffered an infection outbreak, Amazon would potentially have to find new employees or shut down its warehouses until it was safe to open again. Such an outbreak would harm Amazon directly and cause it to lose significant profits. Given this substantial risk to Amazon's business operations, Amazon primarily benefitted from the COVID-19 screenings.

35. Moreover, the COVID-19 screenings identified above were not incidental activities for the Plaintiff and Class Members, but instead, this time was integral and indispensable to their principal activity, was controlled by Amazon, was required by Amazon, was conducted on Amazon's premises, and was performed primarily for the benefit of Amazon and its customers. Therefore, the time spent by the Plaintiff and Class Members completing the COVID-19 screenings is compensable.

36. Under Illinois law, "hours worked" includes "all the time an employee is required to be on duty, or on the employer's premises, or at other prescribed places of work, and any additional time he or she is required or permitted to work for the employer." 56 Ill. Admin. Code § 210.110. Amazon's requirement for its employees to complete a COVID-19 screening prior to clocking-in each shift constitutes "hours worked" under Illinois law. In fact, a similar issue was addressed in *Boone v. Amazon*, 562 F.Supp.3d 1103 (E.D. Cal. 2022) and the *Boone* Court held that the time spent completing COVID-19 screenings is compensable.

37. In light of Amazon's conduct, Plaintiff and Class Members are owed significant unpaid wages and penalties.

38. Plaintiff and Class Members are and were non-exempt employees.

39. Plaintiff and Class Members are and were paid on an hourly rate basis.

40. When they work more than forty (40) hours in a workweek, they are entitled to overtime pay.

41. Although Amazon employs electronic "clocking-in" technology, this technology was not made accessible to Plaintiff and Class Members before the COVID-19 screenings.

42. As a result of Amazon's company-wide policies, Plaintiff and Class Members were not paid for all time worked each day and are owed significant unpaid wages.

43. Amazon's method of paying Plaintiff and Class Members in violation of Illinois law was willful and was not based on a good faith and reasonable belief that their conduct complied with the law. Amazon knew the requirement to pay for all time worked, but intentionally and/or recklessly chose not to do so.

### V. RULE 23 CLASS ACTION ALLEGATIONS

44. Plaintiff brings this action as a class action pursuant to Rule 23 of the Federal Rules

of Civil Procedure on behalf of the Illinois Class, which is comprised of:

> **All current and former hourly paid employees of Amazon who underwent a COVID-19 screening and worked at least 40 hours during at least one week in Illinois in the three-year period before the filing of the Original Complaint to final resolution of this Action.**

45. <u>Numerosity</u>: The number of members in the Class is believed to exceed forty (40) and in fact, is likely to be in the thousands. This volume makes bringing the claims of each individual member of the class before this Court impracticable. Likewise, joining each individual member of the Class as a plaintiff in this action is impracticable. Furthermore, the identity of the members of the Class will be determined from Amazon's records, as will the compensation paid to each of them. As such, a class action is a reasonable and practical means of resolving these claims. To require individual actions would prejudice the Class and Amazon.

46. <u>Typicality</u>: Plaintiff's claims are typical of the Class because like the members of the Class, Plaintiff was subject to Amazon's uniform policies and practices and were compensated in the same manner as others in the Class. Amazon failed to pay the Class Members for all overtime hours they worked. Additionally, members of the Class worked substantially more than forty (40) hours in a week as non-exempt employees. Accordingly, Plaintiff and the Class Members have been uncompensated and/or under-compensated as a result of Amazon's common policies and practices which failed to comply with Illinois law. As such, Plaintiffs' claims are typical of the claims of the Class. Plaintiff and all members of the Class sustained damages arising out of and caused by Amazon's common course of conduct in violation of law as alleged herein.

47. <u>Adequacy</u>: Plaintiff is a representative party who will fairly and adequately protect the interests of the Class because it is in his interest to effectively prosecute the claims herein

alleged in order to obtain the unpaid wages and penalties required under Illinois law. Plaintiff has retained attorneys who are competent in both class actions and wage-and-hour litigation. Plaintiff does not have any interest which may be contrary to or in conflict with the claims of the Class he seeks to represent.

48. <u>Commonality</u>: Common issues of fact and law predominate over any individual questions in this matter. The common issues of fact and law include, but are not limited to:

   a. Whether Plaintiff and the Class are entitled to compensation for the time spent in the COVID-19 screenings;

   b. The amount of time spent in the COVID-19 screenings;

   c. Whether Plaintiff and the Class worked more than forty (40) hours in a workweek;

   d. Whether Amazon failed to pay Plaintiff and the Class wages for all overtime hours worked;

   e. The proper measure of damages sustained by Plaintiff and the Class; and

   f. Whether Amazon's actions were "willful."

49. <u>Superiority</u>: A class action is superior to other available means for the fair and efficient adjudication of this lawsuit. Even in the event any member of the Class could afford to pursue individual litigation against a company the size of Amazon, doing so would unduly burden the court system. Individual litigation would magnify the delay and expense to all parties and flood the court system with duplicative lawsuits. Prosecution of separate actions by individual members of the Class would create the risk of inconsistent or varying judicial results and establish incompatible standards of conduct for Amazon.

50. A class action, by contrast, presents far fewer management difficulties and affords

the benefits of uniform adjudication of the claims, financial economy for the parties, and comprehensive supervision by a single court. By concentrating this litigation in one forum, judicial economy and parity among the claims of individual Class Members are promoted. Additionally, class treatment in this matter will provide for judicial consistency. Notice of the pendency and any resolution of this action can be provided to the Class by mail, electronic mail, text message, print, broadcast, internet and/or multimedia publication. The identity of the members of the Illinois Class is readily identifiable from Amazon's records.

51. This type of case is well-suited for class action treatment because: (1) Amazon's practices, policies, and/or procedures were uniform; (2) the burden is on Amazon to prove it properly compensated its employees including any potential exemptions that might apply; and (3) the burden is on Amazon to accurately record hours worked by employees. Ultimately, a class action is a superior form to resolve the Illinois claims detailed herein because of the common nucleus of operative facts centered on the continued failure of Amazon to pay Plaintiff and the Class per applicable Illinois laws.

## VII.  CAUSES OF ACTION

### FIRST CLAIM FOR RELIEF

**Failure to Pay Overtime as Required by the Illinois Minimum Wage Law**

52. All previous paragraphs are incorporated as though fully set forth herein.

53. The Illinois Minimum Wage Law ("IMWL") entitles covered employees to overtime compensation of not less than one and one-half (1½) times the employee's regular rate of pay for all hours worked in excess of forty (40) in one workweek. *See* 820 Ill. Comp. Stat § 105/4a(1).

54. Defendant is subject to the IMWL's overtime requirements because Defendant is an employer under 820 Ill. Comp. Stat § 105/3(c).

55. During all relevant times, Plaintiff and the Class Members were covered employees entitled to the above-described IMWL protections. *See* 820 Ill. Comp. Stat. § 105/3(d).

56. Plaintiff and the Class Members are not exempt from the IMWL.

57. Plaintiff and the Illinois Class Members routinely worked in excess of 40 hours per week.

58. As described in the foregoing paragraphs, Defendant's compensation policies and practices are in violation of the IMWL. *See* 820 ILCS § 115/1 et seq.

59. Defendant's failure to pay compensation as described above has been willful and/or in bad faith.

60. Defendants knowingly failed to compensate Plaintiff and the Class Members for all hours worked and hours worked in excess of forty (40) hours in a workweek, in violation of the IMWL. *See* 820 Ill. Comp. Stat. § 105/4a(1).

61. Pursuant to 820 Ill. Comp. Stat. § 105/12(a), employers such as Defendant who fail to pay an employee wages in conformance with the IMWL, shall be liable to the employee for, inter cilia, unpaid wages for three years prior to the filing of the lawsuit, punitive damages in the amount of five percent (5%) per month of the amount of underpayment, and reasonable attorneys' fees and costs.

## SECOND CLAIM FOR RELIEF

**Violation of the Illinois Wage Payment and Collection Act**

62. All previous paragraphs are incorporated as though fully set forth herein.

63. The Illinois Wage Payment and Collection Act ("IWCPA") requires employers to pay employees within 13 days after the end of a semi-monthly or bi-weekly pay period or within seven days after a weekly pay period in full at the lawful rate. *See* 820 Ill. Comp. Stat. § 115/4.

64. If an employer fails to pay an employee all wages earned by the statutory deadline. the employee may commence a civil action to recover the amount of any underpayment and damages in the amount of two percent (2%) of each underpayment compounded monthly, plus costs and reasonable attorneys' fees. *See* 820 Ill. Comp. Stat. § 115/14.

65. Pursuant to 735 Ill. Comp. Stat. § 5/13-206, the statute of limitations applicable to the IWPCA is ten years after accrual of the cause of action.

66. Plaintiff and the Class Members are employees for purposes of the IWPCA. *See* 820 Ill. Comp. Stat. § 115/2.

67. Defendant is an employer for purposes of the IWPCA. *See* 820 Ill. Comp. Stat. § 115/2.

68. Defendant's actions, policies and/or practices as described above violate the IWPCA by failing to compensate Plaintiff and the Class Members for hours worked in excess of 40 in a week at one-and-one-half times their regular rate.

69. As a direct and proximate result of this practice, Plaintiff and the Class Members have suffered loss of income and other damages to be determined at trial.

70. As such, Plaintiff and the Class Members are entitled to the underpayment, damages in the amount of two percent (2%) compounded monthly, and reasonable attorneys' fees and costs. *See* 820 Ill. Comp. Stat. § 115/14.

## VIII. <u>JURY DEMAND</u>

71. Plaintiff hereby demands trial by jury on all issues.

## IX. PRAYER FOR RELIEF

Plaintiff, individually and on behalf of all Class Members, prays that the Court:

1. Certify that this action may proceed as a class action under Fed. R. Civ. P. 23;

2. Appoint Plaintiff as Representative of the Class, and appoint her counsel as Class Counsel;

3. Find and declare that Amazon's policies and/or practices described above violate Illinois law;

4. Award all unpaid wages, liquidated damages, penalties, interest, and/or restitution to be paid by Amazon for the causes of action alleged herein;

5. Award costs, and expenses, including reasonable attorneys' fees and expert fees;

6. Award pre-judgment and post-judgment interest, as provided by law; and

7. Order such other and further legal and equitable relief the Court deems just, necessary and proper.

Date: October 31, 2022

Respectfully submitted,

*/s/ Don J. Foty*_____
Don J. Foty
Bar No. 24050022
HODGES & FOTY, LLP
4409 Montrose Boulevard, Suite 200
Houston, Texas 77006
Tel: (713) 523-0001
Fax: (713) 523-1116
dfoty@hftrialfirm.com

AND

Edward Fox
Bar No. 6205330
ED FOX & ASSOCIATES, LTD.
118 N. Clinton St., Suite 425
Chicago, IL 60661

Tel: (312) 345-8877
efox@efox-law.com

Local Counsel